**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

MINERVA MARÍA HERNÁNDEZ
UMPIERRE AND BETZAIDA SANTOS
PAGÁN, individually and on behalf of all
others similarly situated,

    Plaintiffs,

BAYAMON MEDICAL CENTER, a medical
facility, and DOES 1 to 10, inclusive,

    Defendants.

CIVIL NO. 20-CV-01237 (BJM)

**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (DOCKET 113), OR IN
THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT**

**TO THE HON. COURT:**

Defendant Bayamón Medical Center Corp. ("BMC"), through its undersigned counsel,
respectfully moves this Court to dismiss under Fed.R.Civ.P. 12(b) and 12(c) the Second
Amended Complaint (Docket 113)(the "SAC"), as to the one remaining plaintiff, Betzaida Santos
Pagán ( "Santos"), which pleading was filed on her behalf and on behalf of a putative class.  In
the alternative, BMC moves for a more definite statement under Fed.R.Civ.P. 12(e).

## I.    INTRODUCTION

BMC had previously filed Motions for Judgment on the Pleadings on August 31, 2023
(Docket 36) and on April 5, 2024 (Docket 101) to dismiss the Complaint (Docket 1)(the "CPT"),
and the First Amended Complaint (Docket 53)(the "FAC"), respectively, on the pleadings. In
each instance, the then plaintiffs moved for leave to file amended complaints on September 14,
2023 and April 19, 2024 respectively (Docket 41 and 107), which motions for leave to amend the
Court granted on September 28, 2023 and May 6, 2024 respectively (Docket 52 and 110). In the
FAC, while plaintiffs added some purported incidents allegedly suffered by plaintiff Minerva

Hernández Umpierre (hereafter "Hernández"), plaintiffs did not introduce in the FAC any new factual allegations regarding plaintiff Santos. See CPT (Docket 1) at p. 2, ¶9, and FAC (Docket 53) at p. 3, ¶10, and compare generally CPT at pages 1-27 with FAC at pages 1-30.

After allowing the amended complaints, on January 16, 2024 and May 28, 2024 respectively, the Court denied the motions for judgment on the pleadings without prejudice to refiling such motion as to each amended complaint which had been allowed (Docket 85 and 120).  In the CPT and in the FAC, plaintiff Santos did not allege that she had in fact been the victim of identity theft, fraud or other misuse of her personal identifying information as a result of the ransomware attack on BMC, alleging only that she faced the threat of potential identity theft or fraud. See generally CPT at pp. 1-27, ¶¶ 1-117; FAC at pp. 1-30, ¶¶ 1-131. In the SAC which was filed only by the one remaining plaintiff Santos, such plaintiff attempted to cure the deficiencies in the FAC, by adding some purported incidents of harm allegedly suffered by plaintiff Santos on an unspecified date and discovered by plaintiff Santos on an unspecified date. See SAC at pp. 3, 28, ¶¶ 9 and 126.

Ms. Hernández is no longer part of the case (Docket 94). On March 15, 2024, this Honorable Court dismissed plaintiff Hernández's claims without prejudice. See Order (Docket 94)(granting in part BMC's Motion to Dismiss (Docket 68), which argued at pages 3-4, 9-11, that Hernández was not a hospital patient during the relevant period claimed in the FAC and thus had no standing to be a plaintiff).

After BMC renewed its Motion for Judgment on the Pleadings on April 5, 2024 (Docket 101), Santos then amended her complaint on May 13, 2024. See SAC, Docket 113.  Only this time, Santos added to her languid boiler plate assertions (i.e. that she received treatment at BMC, and that because of a ransomware attack on BMC, she faced the threat of potential identity theft

or fraud) that "sometime"[1] between when she received BMC's notice on July 19, 2019 of the May 2019 ransomware Security Incident, and before the eve of her deadline to oppose BMC's Motion for Judgment on the Pleadings:

> she discovered an unknown cellphone account opened in her name. This was a cellphone company she never used. The fraudulent account damaged her credit score. She was forced to expend time and money, including spending approximately $800.00 to repair her credit score.[2]

BMC posits that any such amended pleading at the eleventh hour (i) did not meet the "just cause" standard required to allow such amendment, (ii) was purposefully drafted in vague terms avoiding any actual dates of opening of the account or of discovery of the same to attempt to avoid any arguments regarding possible statutes of limitation or utter lack of diligence in discovery, and (iii) in any event, these conclusory averments are insufficient as a matter of law. No other potential claimant has joined Santos and she remains alone in this so called purported class.

Even with the SAC, this action fails at the first essential step: the existence of a case or controversy under Article III. In the SAC, Santos generally relies on conclusory allegations as to potential evils stemming from data breaches, glossing over both the distinction between ransomware attacks from other types of data breaches — *in ransomware attacks, the aim is to limit the data holder's access to its own data in order to extort payment* — and the utter lack of any actual or immediate harm to Santos or traceable to BMC. Certainly, a purported opening of a "cell account" perhaps close to five years after the May, 2019 ransomware Security Incident, when there are no facts pled in the SAC that Santos was even required to pay or was responsible for any charges associated with such cell phone account, may not be deemed actual or immediate harm, nor any showing of causation or traceability to BMC. Therefore, the case should be

---

[1] See Declaration of Betzaida Santos Pagán of April 18, 2024, Docket 106-2, page 1, ¶ 4.
[2] See SAC, ¶ 9 and see also SAC, ¶ 126.

dismissed for lack of jurisdiction. In doing so, this Court would join the dozens of courts that, applying U.S. Supreme Court precedent on standing, have dismissed so-called "data breach" cases in which a plaintiff, like Santos, largely rely on speculative allegations of future harm or on alleged actual harm not fairly traceable to BMC.

While this Court's inquiry should end with Santos' lack of standing, the SAC is also doomed for other reasons. Plaintiff Santos has failed to plead any plausible claim under Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and as more fully explained below, there are additional jurisdictional challenges, and an utter failure to plead any viable claims under applicable law.

## II.    LEGAL STANDARD

The proper vehicle for challenging a court's subject-matter jurisdiction is Fed.R.Civ.P. 12(b)(1). This rule is a large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction. Valentin v. Hospital Bella Vista, 254 F.3d 358, 362–363 (1st Cir. 2001). Accord AES Puerto Rico v. Trujillo, 133 F.Supp.3d 409, 415-416 n. 7 (D.P.R. 2015)(District court recognized defendants' standing arguments called into question court's subject-matter jurisdiction and where there is a threshold issue presented re subject matter jurisdiction, "'[a] federal court must satisfy itself as to its jurisdiction, including a plaintiff's Article III standing to sue, before addressing his particular claims.'")(quoting Pagan v. Calderon, 448 F.3d 16, 26 (1st Cir. 2006)..

Under Rule 12(b)(1), a defendant may controvert the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position. Valentin, 254 F.3d at 363.[3] This type of challenge under Rule 12(b)(1),

---

[3] Accord Gonzalez v. U.S., 284 F.3d 281, 288 (1st Cir. 2002)("The attachment of exhibits to a Rule 12(b)(1) motion does not convert it to a Rule 56 motion. While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion, such as the one in this case. Heinrich v. Sweet, 44 F.Supp.2d 408, 412 (D.Mass.1999); White v. Comm'r of Internal Revenue, 899 F.Supp. 767, 771 (D.Mass.1995); and Franklin California Tax-Free Trust v. Puerto Rico, 85 F.Supp.3d 577, 587 (D.P.R. 2015)("On a Rule 12(b)(1) motion, the Court may consider materials outside the pleadings to determine jurisdiction.")(citing Gonzalez, 284 F.3d at 288.)

which the First Circuit has called a factual challenge "permits (indeed, demands) differential factfinding. Thus, the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." <u>Valentin</u>, 254 F.3d at 363 (<u>citing</u> <u>Garcia v. Copenhaver, Bell & Assocs.</u>, 104 F.3d 1256, 1261 (11th Cir.1997).[4]

"Because '[f]ederal courts are courts of limited jurisdiction,' the Court must 'begin by ensuring that [it has] jurisdiction to reach the questions presented.'" <u>Laguer v. U.S.</u>, 257 F.Supp.3d 198, 202 (D.P.R. 2017)(<u>quoting</u> <u>Hochendoner v. Genzyme Corp.</u>, 823 F.3d 724, 730 (1st Cir. 2016); and <u>Fina Air v. U.S.</u>, 555 F.Supp.2d 321, 323 (D.P.R. 2008)("This Court must construe federal jurisdiction narrowly.").[5]

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the Court to determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." <u>Ocasio-Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 7 (1st Cir. 2011). The court should "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." <u>Carrero-Ojeda v. AEE</u>, 755 F.3d 711, 717 (1st Cir. 2014); and <u>Ortiz-Sanchez v. Steidel-Figueroa</u>, 2023 WL 6729513, at *1 (D.P.R. Sept. 26, 2023).

---

[4] <u>Accord</u>, <u>ACCO Brands v. Pineyro y Lara Comercial</u>, 27 F.Supp.3d 256, 258 (D.P.R. 2014)(where a Defendant's motion to dismiss under Rule 12(b)(1) challenges the factual accuracy—rather than the sufficiency—of plaintiffs' jurisdictional allegations, such a challenge permits the Court to engage in differential factfinding, under which the plaintiffs' jurisdictional averments are entitled to no presumptive weight. Rather, the Court must resolve the factual disputes between the parties in order to rule on the merits of the jurisdictional claim.)(internal quotations and citations omitted).

[5] <u>Accord</u> <u>Fort v. Abzco</u>, 470 F.Supp.3d 133, 136 (D.P.R. 2020) (district court recognized when deciding a Rule 12(b)(1) motion that federal courts are courts of limited jurisdiction and the court has a duty to construe its jurisdictional grants narrowly)(internal quotations and citations omitted); and <u>Gonzalez v. Otero</u>, 172 F.Supp.3d 477, 496 (D.P.R. 2016)(A plaintiff's choice of a federal forum is subject to careful scrutiny since federal courts are courts of limited jurisdiction. Thus, a District Court has the responsibility to police the border of federal jurisdiction and must rigorously enforce the jurisdictional limits standards that Congress chooses, they possess only that power authorized by Constitution and statute, and therefore must be certain that they have explicit authority to decide a case.)(internal quotations and citations omitted).

The court should also ensure that the pleading requirements of Fed.R.Civ.P 8(a)(2) are satisfied. See Bell Atl. v. Twombly, 550 U.S. 544, 555-556 (2007). "To survive a motion to dismiss, a complaint must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Twombly, 550 U.S. at 570). Plausible means something more than merely possible, and gauging the plausibility of a claim for relief is a context-specific' job that requires drawing on judicial experience and common sense. Ortiz-Sanchez, 2023 WL 6729513, at *1 (internal citations and quotations omitted).

A plaintiff must allege "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 556 U.S. at 678. Accord Tomas-Roman v. Commissioner of Social Security Administration, 2022 WL 13679177, at *1 (D.P.R. Oct. 21, 2022)("'Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief.'")(quoting Ashcroft, 556 U.S. at 679)(internal quotations and alterations omitted). A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not  do. Twombly, 550 U.S. at 555. Accord Van Praag v. DHL Exp. (USA), Inc., 39 F.Supp.3d 155, 156 (D.P.R. 2014).

Additionally, when the request for dismissal depends on a lack of subject matter jurisdiction, a plaintiff may not rest merely on "unsupported conclusions or interpretations of law." Aversa v. U.S., 99 F.3d 1200, 1209-1210 (1st Cir. 1996)(quoting Washington Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993)). "[S]ubjective characterizations or conclusory descriptions of a general scenario which *could* be dominated by unpleaded facts" will not defeat a motion to dismiss. Id. (quoting Coyne v. City of Somerville, 972 F.2d 440, 444 (1ˢᵗ Cir. 1992)). The question is whether the complaint—taking as true the factual allegations, drawing

-6-

all inferences in plaintiff's favor, but discarding legal conclusions and threadbare recitations of the elements—contains enough factual heft to show that the court has subject-matter jurisdiction. See Laufer v. Acheson Hotels, 50 F.4th 259, 265 (1st Cir. 2022). Once a defendant files a motion contesting subject matter jurisdiction, plaintiff has the burden to establish that the Court has jurisdiction. Skwira v. U.S., 344 F.3d 64, 71 (1st Cir. 2003)(citing Murphy v. U.S., 45 F.3d 520, 522 (1st Cir. 1995)).

## III.    BACKGROUND

On May 21, 2019, BMC discovered it had been the victim of a ransomware attack ("May 2019 Incident"). See SAC at p. 4 ¶16. A ransomware attack is one "that holds data hostage but does not steal it." Quintero v. Metro Santurce, 2021 WL 5855752, at *3 (D.P.R. Dec. 9, 2021). Accord In re Practicefirst Data Breach Litig., 2022 WL 354544, at *5 (W.D.N.Y. February 2, 2022)("[T]he primary purpose of a ransomware attack is the exchange of money for access to data, not identity theft."); and Graham v. Univ. Health, 539 F. Supp. 3d 481,487 (E.D.Penn. 2021)("The target of a ransomware attack is the holder of the confidential data; the misappropriation of the data, whether by theft or merely limitation on access to it, is generally the means to an end: extorting payment.").

On July 19, 2019, BMC sent a letter to some of its patients and former patients informing them of the May 2019 Incident. See SAC at p. 4, ¶ 17. BMC specifically informed in such letter that its access to certain patient information was impaired and the information was encrypted for a brief time, but that there was no evidence of exfiltration or unlawful use of the information. Id.; see also Exhibit 1 (sample patient letter sent by BMC).[6]

---

[6] The Court may consider Exhibit 1 at this stage because it is central to Plaintiffs' claims and is referred to in the complaint. See SAC at p. 4, ¶ 17; Newman v. Lehman Brothers 901 F.3d 19, 25 (1st Cir. 2018)(stating that courts may consider in the motion to dismiss stage without turning the motion to a summary judgment "documents central to the plaintiff's claim; [and] ... documents sufficiently referred to in the complaint")(internal citation and quotation omitted).

Plaintiff Santos is a Puerto Rico resident who alleges that she received medical care at BMC, under which BMC received her private information, including clinical, demographical, financial information and information that qualifies as private health information (collectively, "PII", as defined by Plaintiff). SAC at pp. 1-3, ¶¶ 1-6, 8. Santos speculates that her PII was accessed and taken by unauthorized third parties, SAC. p.4, ¶17, and alleges that as a result, she faces "*potential* fraud and identity theft", a decrease in the value of her PII, and losses from the time incurred in remedying or mitigating the effects of the May 2019 Incident, SAC, pp. 16-17, ¶ 62.b.

Notably nearly five years have elapsed between the May 2019 Incident and the filing of the SAC— when Santos faced with BMC's Motion for Judgment on the Pleadings, under sworn declaration indicated that "sometime" after the notice in July 2019:

> she discovered an unknown cellphone account opened in her name. This was a cellphone company she never used. The fraudulent account damaged her credit score. She was forced to expend time and money, including spending approximately $800.00 to repair her credit score.

See SAC, Docket 113, p. 3, ¶ 9 and see also SAC, p. 28, ¶ 126.

## IV.    DISCUSSION

### A.  The Second Amendment to the Complaint, the SAC.

Plaintiff Santos submitted a declaration consciously drafted to avoid indicating when exactly an unknown cell phone account was allegedly opened in her name, when she learned about this so-called account opening and whether she was actually financially responsible for making any payment for this cell phone account.[7] The ambiguous manner in the Santos

---

[7] See April 18, 2024 Declaration of Betzaida Santos Pagan in Opposition to Motion for Judgment on the Pleadings (the "Santos Declaration")(Docket 106-2) at p. 1, ¶¶ 3-4 ("On July 19, 2019, I received BMC's breach notice. ... Sometime after I received BMC's breach notice, I discovered an unknown cellphone account in my

Declaration and the allegations in the SAC are drafted means this event could have happened at any time over nearly a five year period – from sometime after the July 19, 2019 date Plaintiff Santos received notice from BMC (July 20, 2019) through the date of the Santos Declaration (April 18, 2024). BMC respectfully posits that said affidavit was a desperate third attempt to conjure this Court's jurisdiction.

If this alleged injury in fact to Plaintiff Santos occurred at any point during the period of four years and four months, from the time of the May, 2019 ransomware Security Incident which referenced in the BMC July 19, 2019 Notice until the filing of the FAC on September 28, 2023, then there was an utter lack of diligence on the part of Santos and her counsel in not identifying this alleged harm in the period of more than four years from the ransomware incident and the date the Original Plaintiffs submitted their FAC.

Assuming arguendo, Plaintiff Santos did not actually discover this alleged harm until after filing the FAC on September 28, 2023, then the SAC has failed to state a plausible claim for relief based on the long passage of time between the May 2019 ransomware security incident and the post-September 28, 2023 period, the time is too attenuated for purposes of causation to state a plausible claim of harm tied to the May 2019 security incident as opposed to something else causing the harm. See Burger v. Healthcare Management Solutions, LLC, 2024 WL 473735, at *1, 6 (D.Md. Feb. 7, 2024)(district court found in context of ransomware event that plaintiff had failed to allege any concrete harm—imminent or actual—to establish injury-in-fact for Article III standing, but that even if the plaintiff could show she suffered a concrete injury, it was "not fairly traceable to either defendant.", since based on the attenuated chain of possibilities in connection with alleged harm of identity theft, "[i]t is simply mere conjecture to ascribe

---

name."). The allegations in the SAC regarding this matter are similarly ambiguous. SAC at p. 3, ¶9 ("After Plaintiff Santos Pagan received Defendant's breach notice on July 19, 2019, she discovered an unknown cellphone account opened in her name.").

unauthorized charges on [plaintiff]'s credit card and an increase in spam emails and calls to either defendant in this case. [Plaintiff] has not alleged facts sufficient to establish Article III standing to sue."); Peters v. St. Joseph Servs. Corp., 74 F.Supp.3d 847, 857 (S.D.Tex. 2015)(district court dismissed class action data breach complaint based on conclusory allegation data breach proximately caused unauthorized attempted charges to credit card and attempted access to Amazon.com account, where harm alleged was not traceable to defendant sued since allegations failed to account for sufficient break in causation caused by the independent actions of opportunistic third parties not the defendant and were not cognizable under Article III, and where no showing that a favorable decision of court would address the harm experienced by plaintiff where plaintiff failed to allege a quantifiable damage or loss where apparently the credit card company never charged her for an alleged fraudulent purchase); and Whalen v. Michaels Stores, Inc., 689 Fed.Appx. 89, 90 (2d. Cir. May 2, 2017)("[Plaintiff] does not allege a particularized and concrete injury suffered from the attempted fraudulent purchases, however; she never was either asked to pay, nor did pay, any fraudulent charge.").

The relevant inquiry under the Iqbal pleading standard requires the reviewing court to draw on its judicial experience and common sense in determining whether a complaint states a plausible claim for relief. Iqbal, 556 U.S. at 679. Based on the fact that the FAC made similar allegations of harm as to former Plaintiff Hernández whose PII was not even in the Hospital's database at the time of the ransomware event since she had not yet received treatment at the Hospital,[8] the Court's common sense should compel a finding that Plaintiff Santos's speculative chain of injury years after the ransomware event occurred is too attenuated to "'state a claim to relief that is plausible on its face.'", Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570), as to the requirement of impending injury. A plaintiff must allege "more than a

---

[8] See November 27, 2023 Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(1)(Docket 68 at pp. 3-4, 9-11).

sheer possibility that a defendant has acted unlawfully." Id. (citation omitted). Plaintiff Santos's attenuated chain of alleged injury in the SAC fails to nudge her claims of injury for purposes of establishing standing "'across the line from conceivable to plausible.'" Iqbal, 556 U.S. at 680 (quoting Twombly, 555 U.S. at 565-567, 570).

Plaintiff Santos' mere possibility of injury in the SAC fails to show that the pleader is entitled to relief under Fed.R.Civ.P. 8(a)(2), and constitutes a flawed attempt to overcome the injury-in-fact requisite under Article III's standing doctrine under the case or controversy requisite. Liberality and leniency may excuse defects in the Plaintiff's allegations as to the accuracy of the circumstances under which the alleged injuries were sustained, but it is not easy to overlook the date in which she allegedly incurred or discovered any such purported injuries. See Chisholm v. T.J.X. Companies, Inc., 286 F.Supp.2d 736, 738–739 (E.D.Va. 2003).[9] Plaintiff has failed to state a plausible claim without pleading these critical dates in the SAC.

## B. Plaintiff Santos lacks constitutional standing

A plaintiff must have standing to have a cognizable claim before the federal courts. See Va. House of Delegates v. Bethune-Hill, 139 S. Ct. 1945, 1951-1953 (2019). In a class action, the named plaintiffs who seek to represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." Spokeo v. Robins, 578 U.S. 330, 338 n.6 (2016) (quoting Simon v. Eastern

---

[9] See Chisholm, 286 F.Supp.2d at 738–739 ("In most cases in federal courts, plaintiffs are not required to plead when the events giving rise to their complaint occurred. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1309, at 696 (2d ed.1990). In some cases, however, the substantive nature of the lawsuit and the general rules of pleading require the plaintiff to allege when defendant's illegal acts occurred. Id. Significantly, courts have required that a plaintiff plead time when the events in question spanned a number of years and when the date plaintiff discovered his injury appeared to be remote in time. See, e.g., Bankest Imports, Inc. v. ISCA Corporation, 717 F.Supp. 1537 (S.D.Fla.1989) (requiring a more definite statement of time and place where events underlying breach of contract claim spanned seven years); Stewart Coach Indus., Inc. v. Moore, 512 F.Supp. 879 (D.Ohio 1981) (holding that a plaintiff has a duty to plead the date of discovery of fraud where the alleged fraud apparently occurred at a remote time).").

Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976)).[10] Plaintiffs "bear the burden of demonstrating that they have standing." TransUnion LLC, 141 S. Ct. at 2207. "[T]he plaintiff must clearly allege facts demonstrating each element" of the standing inquiry. Spokeo, 578 U.S. at 338 (internal quotation marks, elipsis and citation omitted).

 The "irreducible constitutional minimum of standing" consists of these elements: (1) Plaintiff must show that she has suffered an injury in fact; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, not speculative, that the injury will be redressed by a judicial decision in plaintiff's favor. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992).

The "first and foremost" of standing's three elements is injury in fact. Spokeo, 578 U.S. at 338-339. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal quotation marks and citations omitted). Accord Public Interest Legal Foundation v. Bellows, 92 F.4th 36, 50 (1st Cir. 2024). Both particularization and concreteness are necessary for a plaintiff to have standing. Spokeo, 578 U.S. at 339. A particularized injury affects the plaintiff "in a personal and individual way." Lujan, 504 U.S. at 560 n.1. The plaintiff must show that she personally suffered an injury because of the defendant's conduct. Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 472 (1982). In turn, that injury must be concrete; "it must actually exist." Spokeo, Inc., 578 U.S. at 340. "Allegations of possible future injury do not satisfy the requirements of Art. III." Whitmore v. Arkansas, 495 U.S. 149, 158 (1990). Accord Blum v. Holder, 744 F.3d 790, 796 (1st Cir. 2014).

Based on the authority briefed immediately above, See Burger, 2024 WL 473735, at *1, 6; Peters, 74 F.Supp.3d at 857; and Whalen, 689 Fed.Appx. at 90; Plaintiff Santos has not shown

---

[10] Ultimately, however, in a purported class action, "[e]very class member must have Article III standing in order to recover individual damages." TransUnion LLC v. Ramírez, 141 S. Ct. 2190, 2208 (2021).

that she has suffered any concrete injury in fact. Santos desperate amendment is insufficient to provide her with standing since as discussed previously, her claims of harm are too attenuated, distant and remote and the SAC lacks sufficient allegations for a court to plausibly find causality or traceability to BMC, as opposed to the actions of independent third parties which breaks the alleged chain of causation as to BMC.  Id.

No factual allegations in the SAC show that Ms. Santos personally suffered a concrete injury-an actual injury that is not conjectural or hypothetical. Plaintiff fails to plead in the SAC that she was responsible for any actual economic damage associated with the opening of the cell phone account, thus there is no allegation that she has been a victim of identity theft or other fraud who suffered any concrete injury in fact, much less injury resulting from the May 2019 Incident and plausibly traceable to BMC. These allegations by plaintiff Santos are not cognizable under Article III, where there is no facts pled in the SAC plausibly alleging that a favorable decision of court would address the harm allegedly experienced by Santos where she has failed to allege in the SAC that she suffered any particularized and concrete injury or quantifiable damage or loss in connection with any charges related to the cell phone account since nowhere in the SAC does she allege she ever had to pay any attempted charge in connection with that account.

The allegations in the SAC while rejiggered from her prior pleadings, again come down to allegations of paying for credit monitoring to prevent any risk of potential identity theft or fraud in the future. Recognizing standing based on s p e c u l a t i v e  allegations that Santos might be at risk of potential theft or fraud in the future. "would stretch the injury requirement past its breaking point." Katz v. Pershing, LLC, 672 F.3d 64, 79-80 (1st Cir. 2012). Such a theory of injury based on speculative allegations of potential identity theft or fraud in the future have been repeatedly rejected by the First Circuit, courts in this District, and numerous other courts. See Katz, 672 F.3d at 69-70, 79-80 (describing plaintiff's claim as "conjectural," the First Circuit

determined the plaintiff lacked an injury in fact and thus standing and affirming the district court's dismissal for lack of standing and failure to plead plausible claims); and this District Court has upheld the standing requirements in "data breach" cases, dismissing actions where the claims were grounded on the risk of future identity theft or fraud. Rivera-Marrero v. Banco Popular de Puerto Rico, 2023 WL 2744683, at *12 (D.P.R. Mar. 31, 2023); Quintero, 2021 WL 5855752, at *8; Burger, 2024 WL 473735, at *1, 6; Peters, 74 F.Supp.3d at 857; and Whalen, 689 Fed.Appx. at 90, Courts in this District have upheld the standing requirements in "data breach" cases, dismissing actions where the claims were grounded on the risk of future identity theft or fraud. See Rivera-Marrero, 2023 WL 2744683, at *12; and Quintero, 2021 WL 5855752, at *8, finding that such claimed damages are premised on a speculative risk of harm, that is too abstract to constitute an injury in fact." Rivera-Marrero, 2023 WL 2744683, at *12 (citing Clapper, 568 U.S. at 416). Similarly, in Quintero, this District dismissed a claim of damages based on an alleged risk of potential identity theft or fraud in the future, where like here, a hospital had been the victim of a ransomware attack: "an exchange of money for return of access to data." Quintero, 2021 WL 5855752, at *5, 7 (recognizing that the hospital's data had been encrypted, not "hacked" or stolen, the Quintero court rejected plaintiffs' argument there - similar to the argument made by Santos here in the SAC - that "access by encryption equals acquisition and misuse." Quintero, 2021 WL 5855752, at *7, finding it a false equivalency, which was speculative and inconsistent with the case law. Id. (citing collection of cases). Based on U.S. Supreme Court and First Circuit precedent — notably, TransUnion LLC, Spokeo, Clapper, and Katz — this District concluded in both Rivera-Marrero and Quintero that allegations about the "increased risk" of identity theft or fraud stemming from an alleged data breach or ransomware incident, and the expenses and inconveniences experienced by plaintiffs to "address" such potential identity theft and fraud, did not sufficiently plead an injury in fact. As noted above, the key allegations here are

-14-

indistinguishable from those in <u>Rivera Marrero</u> and <u>Quintero</u>. The applicable law is the same; <u>TransUnion,</u> <u>Spokeo Inc.</u>, <u>Clapper,</u> and <u>Lujan</u> all remain binding precedents, as does <u>Katz</u>. Therefore, applying such law to the allegations in the SAC should yield the same result: dismissal of the case for lack of standing.[11]

In cases in which a plaintiff cannot establish an injury in fact in connection with the alleged harm stemming from the "data breach", courts have refused to recognize standing in connection with the claims seeking diminution of value of the information, costs or compensation for credit monitoring, inconveniences associated therewith, or other associated expenses. <u>See, e.g.</u>, <u>Tsao</u>, 986 F.3d at 1344 ("[A] plaintiff's mitigation costs . . . were insufficient to confer standing because there was no substantial risk of identity theft.")(internal citation omitted); <u>Beck v. McDonald</u>, 848 F.3d 262, 276-277 (rejecting the plaintiff's claim based on the burden of monitoring their financial and credit information and costs of credit monitoring services, noting that this was simply a re-packaging of the first failed theory of standing and that "self-imposed harms cannot confer standing")(citations omitted); <u>Graham</u>, 539 F. Supp. 3d at 487-488 (no standing to claim for costs of monitoring financial records for "hypothetical future criminal acts," nor for claim of diminution of value of PII); <u>Khan v. Children's National Health System</u>, 188 F. Supp.3d 524, 533 (D. Md. 2016)("incurring costs as a reaction to a risk of harm does not establish standing if the harm sought to be avoided is not itself certainly impending.")(internal quotation marks and citations omitted); and <u>In re Zappos.com, Inc.</u>, 108 F. Supp. 3d 949, 961 (D. Nev. 2015)(plaintiffs lacked standing to bring claims of diminution of value of information and mitigation costs related to the threat of future theft or fraud).

---

[11] <u>See, e.g.</u>, <u>Tsao v. Captiva MVP Rest. Partners</u>, 986 F.3d 1332, 1343-1344 (11th Cir. 2021)("conclusory allegations of an elevated risk of identity theft . . . are simply not enough to confer standing"; "[e]vidence of a mere data breach does not, standing alone, satisfy the requirements of Article III standing.")(internal citations and quotation marks omitted); <u>Reilly v. Ceridian Corp.</u>, 664 F.3d 38, 42 (3rd Cir. 2011)("Appellants have not suffered any injury; there has been no misuse of the information, and thus, no harm.").

Such holdings are consistent with the U.S. Supreme Court's admonition that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." See Clapper v. Amnesty Intern. USA, 568 U.S. 398, 416 (2013)). Accordingly, the SAC should be dismissed due to plaintiff Santos' lack of standing. In turn, because that is a jurisdictional issue, it should be addressed before other issues in the case, including dismissal on the merits. See Rivera-Marrero, 2023 WL 2744683, at *2.

### C. In the SAC, Plaintiff Santos has Failed to Plead Fraud with Specificity as is Required by Fed.R.Civ.P. 9(b)

Fed.R.Civ.P. 9(b) provides in relevant part that, "In alleging fraud …, a party must state with particularity the circumstances constituting fraud ..." The First Circuit has recognized that "[t]he major purpose of Rule 9 is to give adequate notice of the plaintiff's claim of fraud." See New England Data Services, Inc. v. Becher, 829 F.2d 286, 288 (1st Cir. 1987)(citing McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228-229 (1st Cir. 1980)). To plead fraud under Fed.R.Civ.P. 9(b), which is a special pleading requirement, requires specification of the time, place, and content of what is alleged to be fraud. See New England Data Services, 829 F.2d at 288 (citing McGinty, 633 F.2d at 228). The First Circuit has recognized that Rule 9(b) "is intended to set a higher than normal threshold of specificity in factual allegations before the discovery machinery can be set in motion." See North American Catholic Educational Programming Foundation, Inc. v. Cardinale, 567 F.3d 8, 16 (1st Cir. 2009). Accord Norfe Group Corp. v. R.Y. Espinosa Inc., 2021 WL 1845329, at *2 (D.P.R. May 7, 2021).[12]

---

[12] See Norfe Group Corp., 2021 WL 1845329, at *2 (Magistrate recognized that "'The purpose of Rule 9(b)'s particularity requirement are threefold: (1) to place defendants on notice and allow them to prepare a meaningful response, (2) to preclude the use of groundless fraud claims as pretext for discovery or "strike suits," and (3) to safeguard defendants from the reputation damage of frivolous charges.'")(quoting *Efron v. Embassy Suites (Puerto Rico), Inc.*, 47 F. Supp. 2d 200, 204 (D.P.R. 1999), *aff'd*, 223 F.3d 12 (1st Cir. 2000) (citing *Becher*, 829 F.2d at 289)).

While the SAC has generalized speculative claims of alleged risk of possible fraud sprinkled throughout the SAC, most of which have absolutely nothing to do with the particular facts of this case,  See generally SAC at ¶¶ 5, 6, 9, 42, 46-49, 51, 55, 56,  59, 62, 100, 126, the only allegations of alleged actual fraud are regarding plaintiff Santos in ¶ 5 ("Some, like Plaintiff Santos Pagan, have experienced actual fraud stemming from the Data Breach.")  ¶ 9 (referring to an unknown cellphone account opened in Ms. Santos name as a "fraudulent account"), ¶ 47 (alleging that Ms. Santos "experienced attempted or completed fraud since the Data Breach occurred."), and ¶ 126 (alleging that Ms. Santos suffered "financial fraud" that damaged her credit score). What each of these four paragraphs of the SAC (¶¶'s 5, 9, 47 and 126) share in common is that none of them have a single allegation as to the "time" the purported fraud as to Plaintiff Santos took place. Under controlling precedent of the First Circuit, the allegations of alleged fraud as to Ms. Santos fails to plead fraud with specificity under Fed.R.Civ.P. 9(b) and must be dismissed since not giving any specific time as to when the alleged fraud took place, the SAC fails to satisfy the heightened pleading requirement, needed for pleading actionable claims of fraud under Rule 9(b).

**D.  Plaintiffs have not alleged facts showing jurisdiction under CAFA**

Congress enacted the Class Action Fairness Act of 2005 ("CAFA") to provide "Federal court consideration of interstate cases of national importance under diversity jurisdiction." Amoche v. Guarantee Trust Life 556 F.3d 41, 47 (1st Cir. 2009). CAFA relaxes somewhat diversity jurisdiction requirements for class actions in which the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs. 28 U.S.C. §1332(d)(2). In such cases, complete diversity of all class members and all defendants is unnecessary; minimal diversity—i.e., where at least one member of the class of plaintiffs is a citizen of a state different from the defendant—may suffice. Id. Even then, the court should or may decline jurisdiction in certain cases under CAFA's exceptions. For example, the court should not exercise jurisdiction when more than two-thirds of

members of a proposed class and the primary defendant are citizens of the state in which the action was originally filed. See 28 U.S.C. § 1332(d)(4)(B).

Plaintiff Santos here, like any other party "invoking the jurisdiction of a federal court[,] carr[ies] the burden of proving its existence." Skwira, 344 F.3d at 71; and Mitchell v. Wells Fargo, 355 F. Supp. 3d 1136, 1152 (D.Utah 2018)(noting, in purported class action filed in federal court alleging jurisdiction under CAFA that "Plaintiffs, who bear the burden, have not made an adequate showing that federal jurisdiction exists under § 1332(d)."). A plaintiff must allege facts that render its jurisdictional allegations under CAFA plausible. Penrod v. K&N Engineering, 2019 WL 1958652, at *4 (D.Minn. May 2, 2019)("Factual allegations bearing on jurisdiction must be considered to determine if CAFA jurisdiction is truly plausible[,]" granting motion to dismiss); and Lapaglia v. Transamerica Casualty, 155 F. Supp. 3d 153, 156 (D.Conn. 2016)("I cannot fathom that a plaintiff who has a genuine good faith factual basis for invoking a federal court's subject matter jurisdiction will be unable to allege facts that at least plausibly support this jurisdiction.").

Plaintiff Santos has failed to shoulder her burden. She includes only threadbare recitals that this Court has jurisdiction under CAFA because some members of the putative class are citizens of a state different from the defendant, and the amount in controversy exceeds $5 million. These are conclusory allegations not entitled to any presumption of truth. Penrod, 2019 WL 1958652, at *4; and Miller v. Century Link, 2017 WL 3616888, at *2 (W.D.Wis. Aug. 23, 2017) (analyzing lack of factual allegations supporting plaintiffs' threadbare conclusions on minimum diversity and amount in controversy in case brought under CAFA). Santos offers no *factual* allegations to support minimum diversity. To the contrary, the scarce factual allegations of citizenship show Santos and the sole defendant are each citizens of Puerto Rico. SAC at ¶¶ 8 and 10. By like token, there are no facts alleged that could support the boilerplate allegation that the amount in controversy exceeds $5 million. See Weir v. Cenlar FSB, 2018 WL 3443173, at *12 (S.D.N.Y.

July 17, 2018)("[T]he jurisdictional amount, like any other factual allegation, ought not to receive the presumption of truth unless it is supported by facts rendering it plausible.")(internal citations omitted). In the SAC, Santos does not allege an estimate of the amount each class member suffered, nor does she even allege that she suffered any actual damages from the opening of the cell phone account, much less the value of any alleged damages from such account. To the extent the claimed damages of approximately $800.00 were for credit monitoring to protect against future harm to her credit score they are not actionable damages. Quintero, 2021 WL 5855752, at *2-3, 7-9. These deficiencies prevent even the crudest calculation of the amount in controversy. See Penrod, 2019 WL 1958652, at *4 ("[o]n a very basic level, the amount in controversy is calculated by multiplying the number of class members by the value of damages to each class member.").

Because plaintiff Santos has not set forth any alleged *facts* supporting the conclusions that there is at least some diversity of citizenship between the supposed class and the defendant[13] and that the amount in controversy exceeds $5 million, they have not shown that jurisdiction is proper under CAFA.

**E.    Plaintiff Santos has failed to state a claim under the Stored Communication Act**

Plaintiff Santos also claims BMC violated the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2713. The SCA creates a civil cause of action for "any provider of electronic communication service, subscriber, or other person aggrieved by any violation of this chapter in

---

[13] Even if Plaintiffs had made sufficient factual allegations to make their jurisdictional claim under CAFA plausible, that would not end the jurisdictional inquiry under CAFA. "[T]he home state exception requires a district court to decline jurisdiction over a putative class action when: two-thirds or more of the members of all proposed plaintiff classes . . . and the primary defendants, are citizens of the State in which the action was originally filed." Dee v. Chelsea North Shore Assisted Living, Inc., 585 F. Supp. 3d 119, 121 (D. Mass. 2022)(declining federal jurisdiction where there was a reasonable probability that two-thirds or more of the putative class members were domiciled in Massachusetts, the state in which the action was filed and of which defendant was a citizen). BMC is a local hospital in Bayamón, Puerto Rico; the sole named plaintiff is a Puerto Rico citizen. No factual allegation in the SAC supports or even permits an inference that any putative class member (much less a significant number thereof) is a citizen of another state. Moreover, other CAFA exceptions may likewise be relevant in this case.

which the conduct constituting the violation is engaged in with a knowing or intentional state of mind. . . ." 18 U.S.C. § 2707(a).[14] However, "[t]he SCA is not a catch-all statute designed to protect the privacy of stored Internet communications; instead it is narrowly tailored to provide a set of Fourth Amendment-like protections for computer networks."). Anzaldua v. N.E. Ambulance & Fire Prot. Dist., 793 F.3d 822, 839 (8th Cir. 2015)(quoting Orin S. Kerr, A User's Guide to the Stored Communications Act, and A Legislator's Guide to Amending It, 72 Geo. Wash. L. Rev. 1208, 1214 (2004)). See Dyer v. Northwest Airlines Corporations, 334 F. Supp. 2d 1196, 1199 (D.N.D. 2004) ("Courts have concluded that 'electronic communication service' encompasses internet service providers as well as telecommunications companies whose lines carry internet traffic, but does not encompass businesses selling traditional products or services online.")(internal citations omitted).

The SAC does not plead how BMC allegedly provides patients, as alleged users, the ability to send or receive wire or electronic communications. Conclusions are not enough to state a claim. Twombly, 550 U.S. at 555. In any event, the allegation that BMC stores its patients' PII and utilizes such information to provide services to its patients, does not in any manner comply with the necessary predicate pleading that BMC somehow provided to users the ability to send or receive wire or electronic communications. See 18 U.S.C. § 2510(15). Neither does the SAC show how BMC provided "any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the

---

[14] The SCA pertinent sections establish the following:
(1) a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service; and
(2) a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service—
(A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service. . . .
18 U.S.C. §§ 2702(a)(1) to (2)(A). The SCA defines both "electronic communication service" and "remote computing service." "'Electronic communication service' means any service which provides to users thereof the ability to send or receive wire or electronic communications." Id. § 2510(15). "'Remote computing service' means the provision to the public of computer storage or processing services by means of an electronic communications system." Id. § 2711(2).

transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications; …." See 18 U.S.C. § 2510(14).

Plaintiffs' conclusory allegations that BMC lacked required security measures or failed to create reasonable safeguards for the PII, also does not satisfy the SCA's predicate requisite that BMC "knowingly" divulged the Plaintiffs' information. Cf. Pica v. Delta Air Lines, 2019 WL 1598761, at *9 (C.D.Cal. Feb. 14, 2019), aff'd, 812 F. App'x 591, 593 (9th Cir. 2020); see also Willingham v. Global Payments, Inc., 2013 U.S. Dist. LEXIS 27764, 2013 WL 440702, at *12 (N.D.Ga. Feb. 5, 2013). The Sixth Circuit addressed the definition of "knowingly" in Long v. Insight Commc'ns of Cent. Ohio, LLC, 804 F.3d 791 (6th Cir. 2015), and held that a plaintiff cannot state an SCA claim by alleging the defendant "negligently or recklessly fail[ed] to establish the accuracy of the information it disclosed in response to the subpoena." Plaintiff Santos' SCA claims should be dismissed as a matter of law accordingly.

## F.  The Supplemental Claims Under Puerto Rico Law Should be Dismissed

Once the claims conferring federal jurisdiction as dismissed from this case for the reasons briefed above, the Court should exercise its discretion to decline to exercise supplemental jurisdiction and dismiss the supplemental claims arising under Puerto Rico law. Correa-Ruiz v. Fortuño, 573 F.3d 1, 4 n.1 (1st Cir. 2009); Marrero-Gutierrez v. Molina, 491 F.3d 1, 7-8 (1st Cir. 2007); and Campagna v. Mass. Dep't. of Envtl. Prot., 334 F.3d 150, 151, 157 (1st Cir. 2003).

## G.  Assuming Arguendo the Court Chooses to Exercises Supplemental Jurisdiction, Plaintiff Santos' substantive Commonwealth law claims fail as a matter of law

Even if plaintiff Santos could overcome her lack of standing and insufficient allegations supporting federal jurisdiction under CAFA or under the SCA, which she cannot, the SAC should still be dismissed for failure to state a claim. Plaintiff Santos asserts three Commonwealth causes

of actions: (1) breach of express and implied contract, (2) breach of covenant of good faith and fair dealing, and (3) negligence. SAC at ¶¶ 84-130. Each claim fails as a matter of law.

### 1. Breach of contract

In order to state a claim for breach of contract under Puerto Rico law, a plaintiff must plead (1) the existence of a valid contract, (2) a material breach by one of the contracting parties, and (3) resulting damages. Mega Media Holdings v. Aerco Broad., 852 F. Supp. 2d 189, 198 (D.P.R. 2012)(citing T.C. Invs. v. Becker, 733 F. Supp. 2d 266, 278 (D.P.R. 2010)). A pleader states a cognizable breach of contract claim when a complaint includes "sufficient allegations of a breach of [that contract] and that the breach caused an identifiable harm." Almeida-León v. WM Cap. Mgmt., 993 F.3d 1, 13 (1st Cir. 2021)(internal citation omitted).

Plaintiff Santos' breach of contract claim stems from BMC's purported agreement and supposed failure to "implement reasonable and adequate data security safeguards to protect the PII Plaintiffs and Class Members entrusted to BMC", SAC at ¶¶ 87-88, and while the SAC is not a model of clarity on this point, Santos also seems to read duties allegedly arising from the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E, and Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, into an alleged implied contract. SAC at ¶¶ 22-31.

In other words, Plaintiff's breach of contract claim hinges on the bald and highly speculative purported "unauthorized" access to her personal information, SAC at ¶¶ 5, 16, 20, 31, 32, 57, 76, 81-83, 99-100, 125-127, which is, in turn, based on Plaintiff's baseless claim that because some data in BMC's systems was encrypted, it must have been accessed by hackers. SAC at ¶ 17. Courts have repeatedly rejected these sort of conclusory claims. See Kuhns v. Scottrade, Inc., 868 F.3d 711, 717 (8th Cir. 2017)("The implied premise that because data was hacked [a

defendant's] protections must have been inadequate is a 'naked assertion[] devoid of further factual enhancement' that cannot survive a motion to dismiss.")(quoting Iqbal, 556 U.S. at 678)).

In Quintero, this Court rejected a similar argument by stating that data encryption does not equal acquisition and misuse of personal information. Quintero, 2021 WL 5855752, at *7. Here, not only is the SAC devoid of any allegations other than mere speculation, but the 2019 Notice, referenced in the SAC, states that there is no evidence of exfiltration of personal information in connection with the May 2019 Incident. See Exhibit 1 at 1.

Plaintiff Santos' claim is grounded on conclusory and speculative allegations. Even worse, those allegations are contradicted by the document Plaintiff Santos herself referred to and relied on in the SAC, the Notice. See Exhibit 1 at 1. "The Court does not [need to accept] as true allegations contradicted by documents attached to or referred to in the complaint and is not required to turn a blind eye to documents that qualify under the doctrine of incorporation-by-reference." Frengel v. McLaren Auto., Inc., 2022 WL 17491176, at *3 (S.D.Cal. Dec. 7, 2022); and Carden v. Klucznik, 775 F. Supp. 2d 247, 249 (D. Mass. 2011)("On a motion to dismiss, a court must accept all factual allegations in the complaint as true. But a court will not accept as true any facts that are 'conclusively contradicted by plaintiffs' concessions or otherwise.").

Moreover, Santos' attempt to manufacture a contractual claim under HIPAA rules or § 5 of the FTC Act—by reading them into an implied contract while also asserting these are "legal dut[ies] aris[ing] outside of any contractual responsibilities, implied or express, that BMC had between Plaintiffs and Class Members, …", SAC at ¶ 106 - is also unavailing. These statutes cannot support a claim for breach of contract because they do not provide a private right of action. Marrero v. Corp. del Fondo del Seguro, 2021 WL 1731698, at *2 (D.P.R. Apr. 30, 2021)("[T]here is no private cause of action under HIPAA."); Mulder v. Kohl's Dep't Stores, 2016 WL 393215, at *3 (D.Mass. Feb. 1, 2016)("The Federal Trade Commission Act does not provide for a private

cause of action.") *aff'd*, 865 F.3d 17 (1st Cir. 2017); <u>Kyricos v. Mary's Gone Crackers</u>, 2015 WL 13548155, at *2 (D.Me. Sept. 29, 2015), *aff'd*, 2015 WL 13548156 (D.Me. Nov. 25, 2015) ("Here, neither the Food, Drug and Cosmetic Act nor the Federal Trade Commission Act provides a private cause of action."); <u>Rosado-Montes v. U.S.</u>, 8 F. Supp. 3d 55, 62 (D.P.R. 2014)("The defendants are right that this court lacks jurisdiction to entertain this claim, for it is beyond dispute that HIPAA creates no private cause of action.").

A breach of contract claim is proper when there is a breach of the express terms of the contract. <u>Roca v. LM Waste</u>, 2022 WL 967750, at *10 (D.P.R. Mar. 29, 2022)("To that effect, 'an action for damages for breach of contract . . . only lies when the damage suffered exclusively arises as a consequence of the breach of an obligation specifically agreed upon, which damage would not occur without the existence of a contract.'"). Santos has not alleged that the relevant provisions of the FTC Act and HIPAA were expressly incorporated into the alleged contract. Accordingly, their purported violation cannot give rise to a viable breach of contract claim.

Plaintiff Santos has also failed to allege she suffered actual damages or harm due to breach of contract. Even if the Court were to consider the allegations as to having incurred out-of-pocket expenses for mitigation, SAC at ¶ 59, such self-inflicted harm is not considered an injury. <u>In re SuperValu, Inc.</u>, 870 F.3d at 771; <u>see also Tsao</u>, 986 F.3d at 1345.

The SAC fails to allege that there was an actual material breach of any contractual obligation by BMC or that Plaintiff Santos actually suffered damages. Plaintiff Santos, thus, did not plead a plausible breach of contract claim.

### 2. Breach of covenant of good faith and fair dealing

Plaintiff Santos' claim for breach of covenant of good faith and fair dealing also fails as a matter of law. "Puerto Rico law implies into contracts the covenant of good faith and fair dealing." <u>Punta Lima, LLC, v. Punta Lima Development Company, LLC</u>, 440 F. Supp. 3d 130,

154 (D.P.R. 2020)(citing P.R. LAWS ANN. tit. 31, § 3375). When claiming a violation of the covenant of good faith and fair dealing, the "plaintiff must prove bad faith or intentional fault, given that good faith is presumed." González-Camacho v. Banco Popular, 318 F. Supp. 3d 461, 483 (D.P.R. 2018)(granting motion to dismiss).

Plaintiff Santos' pleading regarding the purported breach of covenant of good faith and fair dealing is fatally conclusory. See SAC at ¶¶ 93-102. Plaintiff Santos has not alleged (because she cannot) any facts showing that BMC acted in bad faith and that such bad faith resulted in hackers' access of her personal information. Santos has also failed to plead facts stating that BMC acted in bad faith in its implementation and maintenance of security procedures to protect Plaintiff's personal information. See González-Camacho, 318 F. Supp. 3d at 483 (dismissing breach of implied covenant of good faith and fair dealing claim because plaintiffs did not explicitly mention how the defendant acted in bad faith).

### 3. Negligence

Plaintiff Santos' negligence claim also fails as a matter of law and must be dismissed. Claims premised on purported negligent actions or omissions (before November 2020)[15] are governed by Article 1802 of Puerto Rico's Civil Code, which imposes liability upon a person for an "act or omission" that "cause[s] damages to another through fault or negligence." Vázquez-Filippetti v. Banco Popular, 504 F.3d 43, 49 (1st Cir. 2007). The essential elements of any tort claim under Article 1802 are: (1) a negligent or intentional act or omission; (2) damages; and (3) a causal nexus between the damages and the defendant's act or omission. Kolker v. Hurwitz, 2011 WL 292264, at *6 (D.P.R. Jan. 31, 2011)(citing Vázquez-Filippetti, 504 F.3d at 49)); Torres v.

---

[15] See Gomes Fernandes v. Gomes Fernandes, 2023 WL 1784545, at *1, n.1 (D.P.R. Feb. 3, 2023) (explaining that the Puerto Rico Civil Code was amended in 2020, but that, since "the causes of action pertaining to this case arose when the previous Code was still in effect . . . the Court [would] analyze the issues . . . under the provisions of the 1930 Civil Code.").

<u>Kmart Corp.</u>, 233 F. Supp. 2d 273, 277-278 (D.P.R. 2002)); <u>see also</u> <u>Torres-Maldonado v. Ruiz-Quijano</u>, 2010 WL 4692048, at *3 (D.P.R. Nov. 16, 2010).

Plaintiff Santos' negligence claim is also grounded on sheer speculation. As discussed above, although she asserts that she faces "[a]n increased risk of identity theft," SAC at ¶ 126, she has not alleged any facts showing that in fact she is under an imminent threat of future identity theft. Further, Santos has not adequately alleged that BMC breached any duty of care by failing to act as a prudent and reasonable person under the circumstances. <u>See</u> <u>Vazquez-Filippetti</u>, 504 F.3d at 49. The SAC contains merely conclusory allegations that BMC breached its duty of care by supposedly failing to implement adequate security measures required by HIPAA rules or Section 5 of the FTC Act.[16] <u>See, e.g.</u>, SAC at ¶¶ 23-32.

Alleged violations of statutes that do not provide a private right of action—like Section 5 of the FTC Act and HIPAA—cannot support a negligence claim. <u>See, e.g.</u>, <u>In re Blackbaud, Inc., Customer Data Breach Litig.</u>, 567 F. Supp. 3d 667, 683 (D.S.C. 2021)("Initially, Plaintiffs cannot base negligence per se claims on the HIPAA because it was 'enacted for the protection of the public and not with the protection of an individual private right' in mind.")(quoting <u>Winley v. International Paper Company</u>, 2012 WL 13047989, at *10 (D.S.C. Oct. 23, 2012); <u>Zoll Med. Corp. v. Barracuda Networks</u>, 565 F. Supp. 3d 101, 107 (D. Mass. 2021)("Plaintiffs' attempts to locate an independent legal duty in Barracuda's ostensible HIPAA obligations are equally unavailing. Plaintiffs have neither furnished any authority in support of their position that HIPAA creates a tort duty nor specified from which provisions the ostensible duty arises.").

---

[16] Courts have dismissed complaints based on similar allegations, concluding there is no common law duty to safeguard personal information. <u>Cmty. Bank of Trenton v. Schnuck Mkts.</u>, 887 F.3d 803, 816 (7th Cir. 2018); <u>McConnell v. Ga. Dep't of Labor</u>, 814 S.E.2d 790, 798 (Ga.Ct.App. 2018).

Moreover, Santos has not adequately alleged that BMC violated § 5 of the FTC Act or HIPAA. As discussed above, Santos' conclusory allegations that BMC failed to use reasonable measures to protect Private Information and did not comply with applicable industry standards, SAC at ¶¶ 32-39, are insufficient to state a claim. Plaintiff's inability to plausibly allege any facts supporting her conclusory allegation that BMC failed to use reasonable security procedures dooms her claim. See Hartigan, 501 F. Supp. 3d at 7 (conclusory allegation that defendant "did not comply with its privacy policy cannot meet Twombly's plausibility standard …"). Nor has Plaintiff alleged facts showing that she has suffered actual economic damages from the opening of the cell phone account. As noted above, Plaintiff Santos has not sufficiently alleged an injury in fact. See Vazquez-Filippetti, 504 F.3d at 49 (noting that one of the essential elements of a negligence claim is "evidence of physical or emotional injury[.]"); see also MVM Inc. v. Rodríguez, 568 F. Supp. 2d 158, 175 (D.P.R. 2008)("The Supreme Court of Puerto Rico has consistently stated that it is essential that the existence of damages not be speculative or the product of a caprice or a whim for tort actions to proceed."). Indeed, courts in data breach cases have routinely dismissed negligence claims based on the same types of injuries Plaintiffs allege here. See supra at IV-A; Amburgy v. Express Scripts, Inc., 671 F. Supp. 2d 1046, 1055 (E.D.Mo. 2009)(dismissing negligence claim because "[d]amages cannot reasonably be assessed for a hypothetical harm which may (or may not) come to plaintiff in the future.").

As with standing, courts have concluded that general allegations that personal information diminished in value are not enough to survive a motion to dismiss; a plaintiff must allege facts showing how the personal information lost value. Gardiner v. Walmart, 2021 WL 4992539, at *3 (N.D.Cal. July 28, 2021). Similarly, general allegations of lost time are not a cognizable injury for purposes of a negligence claim. Id. at *4-5; see also Anderson v. Hannaford Bros., 659 F.3d 151, 165 n.10 (1st Cir. 2011)("[W]here neither the plaintiff nor those

similarly situated have experienced fraudulent charges resulting from a theft or loss of data, the purchase of credit monitoring services may be unreasonable and not recoverable."); and Whalen, 689 Fed.Appx. at 90 (Plaintiff did not allege particularized concrete injury suffered from attempted fraudulent purchase, where she was never asked to pay nor paid any charge for it).

## V.   CONCLUSION

The SAC does not a d e q u a t e l y plead a case or controversy under Article III. While this Court's inquiry should end with plaintiff Santos' lack of standing, the SAC cannot proceed for other reasons, as well. In the SAC, plaintiff Santos has failed to plead any plausible claim under Iqbal, 556 U.S. at 678, fails to plead fraud with specificity, and as more fully briefed above, there are other fatal deficiencies, including the lack of factual allegations sufficient to establish jurisdiction under CAFA or the SCA and a failure to plead any viable claims under applicable law as to any of the causes of action asserted.

In the alternative, BMC respectfully requests the Court, pursuant to Fed.R.Civ.P. 12(e),[17] to order plaintiff Santos to make a more definite statement of the SAC in this regard. BMC objects to plaintiff Santos' vague and ambiguous position of not specifically identifying the date(s) a cellphone account was allegedly opened under her name, and when she allegedly learned about the cellphone account having been opened under her name, and when, if any, payments had to be made by plaintiff Santos for any charges associated with that cellphone account. In other words, when was the cell phone account opened in Santos' name? When did Santos discover an unknown

---

[17] Fed.R.Civ.P. 12(e) provides that, "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order."

cellphone account had been opened in her name? When did the fraudulent account damage her credit score? When was she forced to expend time and money to repair her credit score?

**WHEREFORE**, for the reasons stated above, BMC respectfully requests that the Court enter judgment dismissing the case with prejudice, or, in the alternative, grant the relief sought under Fed.R.Civ.P. 12(e).

**RESPECTFULLY SUBMITTED** in San Juan, Puerto Rico, this 21st day of June, 2024.

**WE HEREBY CERTIFY** that on this same date, undersigned counsel electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

> **S/Michael Craig McCall**
> Michael Craig McCall
>  USDC-PR 210412
>
> **THE LAW OFFICES OF MICHAEL CRAIG MCCALL**
> 154 Calle Ensanche Oriente, PMB 511
> Humacao, PR 00791
> Tel. (787) 232-4530/Fax. (787) 274-8390
> craigmcc@me.com
>
> **/S/José A. Morales Boscio**
> José A. Morales Boscio
> Morales Boscio Law Offices PSC
> USDC 220614
>
> VIG Tower Suite 1500
> Ave. Ponce de León 1225
> Santurce, PR 00907-4980
> Tel. 787.473.7778
> E-Mail: jamb@mbprlaw.com
> **Counsel for Bayamón Medical Center Corp.**